**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

VANESA SEMLER,

                Plaintiff,

v.                                         Case No:  6:19-cv-425-Orl-78LHR

H BION, INC., SOOAM BIOTECH
RESEARCH FOUNDATION, and
HWANG WOO SUK,

                Defendants.
_____/

## <u>ORDER</u>

THIS CAUSE is before the Court on Defendants' Motion to Dismiss (Doc. 9) and Plaintiff's Verified Response (Doc. 14). For the reasons set forth below, the Motion is granted.

## I.    BACKGROUND

This dispute spawns from the alleged excessive cloning of "the World's smallest dog" by Defendants H Bion, Inc. ("**H Bion**"), Sooam Biotech Research Foundation ("**Sooam**"), and Hwang Woo Suk ("**Hwang**"), who are all engaged in the business of animal cloning. (Doc. 1, ¶ 1–5,17). Defendant Hwang is a resident and citizen of South Korea. (Hwang Decl., Doc. 9-1, ¶ 3). He serves as the Chief Executive Officer of Defendant H Bion and as the Chief Executive Officer of Defendant Sooam. (*Id.* ¶ 4; Doc. 1 ¶¶ 5–6). Both businesses are incorporated in, and have their principal places of business in, South Korea. (Doc. 9-1, ¶ 4).

In or about January of 2017, Defendants contacted Plaintiff Vanesa Semler and invited her and her husband on an all-expenses paid trip to South Korea to discuss the

cloning and research of their miniature Chihuahua, "Miracle Milly." (Doc. 1, ¶ 1; Doc. 15-1; Doc. 9-1, ¶ 16). Plaintiff accepted the invitation and traveled from her home in Puerto Rico to South Korea for a tour of H Bion's research facility, where the cloning and research would occur. (Doc. 9-1, ¶ 16).

On February 11, 2017, Plaintiff and H Bion entered into a Research Collaboration Agreement ("**Agreement**") regarding the cloning and research of Milly. (Doc. 1, at 14–22; Doc. 9-1, ¶ 12). Pursuant to the Agreement, H Bion agreed to produce "approximately [ten] cloned puppies" ("**Milly Clones**"). (*See* Doc. 1 at 17 (provision 2.6)). In exchange for providing Milly's genetic material, Plaintiff would receive one of the Milly Clones free of charge. (*See id.*). H Bion also agreed to provide Plaintiff with an ultrasonographic image of each pregnancy diagnosis of a Milly Clone, notice of successful delivery of a Milly Clone, and written verification of a genetic match to Milly. (*Id.* at 16 (provision 2.4)).

Pursuant to the Agreement, Plaintiff and H Bion received equal "rights, title, and interest in and to any technological/scientific information, know-how, products, materials or other forms of intellectual property developed or invented by H Bion in the use of DNA from [Milly] during the performance of the" research performed by H Bion in connection with the Agreement. (*Id.* at 18 (provision 4.1)). For any disputes arising from the Agreement, the parties agreed that they would submit "to binding arbitration . . . in the [United States]" and that the Agreement would be construed in accordance with the "laws of the [United States]." (*Id.* at 20 (provision 6.4); Doc. 19-1, ¶ 21).

Once the Agreement was formalized and executed, Plaintiff and her family moved to Florida. (Doc. 19-1, ¶ 9; Doc. 15-8). Months later, Defendants allegedly produced forty-nine Milly Clones, and disseminated dozens of Milly Clones and Milly's DNA to third

parties for Defendant's own gain. (Doc. 1, ¶ 21). Furthermore, Defendants did not provide Plaintiff with any ultrasonographic images or notices of any successful delivery of the Milly Clones. (Doc. 1, ¶ 30). Nor did they verify the genetic match of any Milly Clones to Milly. (*Id.*).

In September of 2018, Plaintiff filed a demand for arbitration with JAMS and served it on H Bion and Hwang. (*See* Doc. Nos. 15-5, 15-6). H Bion and Hwang allegedly refused to arbitrate, therefore Plaintiff initiated suit against Defendants in this Court. (Doc. 14 at 5). Defendants move to dismiss the Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Alternatively, Defendants' seek to compel arbitration and stay or dismiss the case under the Federal Arbitration Act ("**FAA**") and Federal Rule of Civil Procedure 12(b)(6). If the Court does not dismiss the action on one of those grounds, Defendant moves to dismiss Counts II and III for failure to state a claim.

## II.   Legal Standard

Absent an evidentiary hearing, the burden is on the plaintiff to present a *prima facie* case of personal jurisdiction over a nonresident defendant. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). The court construes all well-pleaded allegations in the plaintiff's complaint as true unless directly contradicted by the defendant's affidavits. *Id.*

"The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis." *Id.* First, the court considers the forum state's long arm statute. *Abramson v. Walt Disney Co.*, 132 F. App'x 273, 275 (11th Cir. 2005). "Florida's long-arm statute provides for two types of personal jurisdiction: specific jurisdiction[,] . . . where a party's contacts with the forum relate to the cause of action and general jurisdiction[,] . . . where a party's contacts are unrelated to the litigation but, nonetheless,

are "continuous and systematic." *Richards v. Fin. Servs. Auth.*, No. 5:09-cv-447-Oc-32GRJ, 2010 WL 2652509, at *2 (M.D. Fla. May 28, 2010) (citing Fla. Stat. § 48.193(1)–(2)), *adopted*, 2010 WL 2652513 (M.D. Fla. July 1, 2010).

Second, if personal jurisdiction is proper under state law, the court must determine that exercising personal jurisdiction is proper under the Due Process Clause of the Fourteenth Amendment. *Madara*, 916 F.2d at 1514. This determination involves deciding "whether [the defendant] has established 'minimum contacts' with Florida" and "whether the exercise of personal jurisdiction over [the defendant] would offend 'traditional notions of fair play and substantial justice.'" *Id.* at 1516.

## III.   DISCUSSION

### A.   Florida's Long-Arm Statute

The Court first considers whether personal jurisdiction exists over Defendants under Florida's long-arm statute. Florida's long-arm statute authorizes "both general and specific personal jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013) (citing Fla. Stat. § 48.193(1)–(2)). General personal jurisdiction exists when a defendant "is engaged in substantial and not isolated activity within this state . . . whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). By contrast, "specific personal jurisdiction authorizes jurisdiction over causes of action arising from or related to the defendant's actions within Florida and concerns a nonresident defendant's contacts with Florida only as those contacts related to the plaintiff's cause of action." *Louis Vuitton*, 736 F.3d at 1352 (citation omitted).

The reach of Florida's long-arm statute is a question of Florida law. *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1271 (11th Cir. 2002). Thus, the Court must construe the

long-arm statute as would the Florida Supreme Court, and, absent some indication that the Florida Supreme Court would hold otherwise, this Court is bound to adhere to decisions of Florida's intermediate courts. *Id.*

Here, Plaintiff seeks to invoke the Court's exercise of specific jurisdiction over Defendants pursuant to sections 48.193(1)(a)1., 2., 6., and 7. of Florida's Long Arm Statute. (Doc. 1, ¶¶ 12, 14).

       1.       *Section 48.193(1)(a)1.*

Section 48.193(1)(a)1. provides jurisdiction over a defendant for a cause of action arising from "[o]perating, conducting, engaging in, or carrying on a business or business venture in [Florida] or having an office or agency in [Florida]." To establish that a defendant is "carrying on business" for the purposes of the long-arm statute, "the activities of the defendant[s] must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005). "Factors to consider in making this determination include: (1) the presence and operation of an office in Florida; (2) the possession and maintenance of a license to do business in Florida; (3) the number of Florida clients served; and (4) the percentage of overall revenue gleaned from Florida clients." *Stonepeak Partners, LP v. Tall Tower Capital, LLC*, 231 So. 3d 548, 555 (Fla. 2d DCA 2017) (quotations omitted).

To prove that Defendants do not conduct business in Florida, they proffer the affidavit of Hwang. (*See* Doc. 9-1). In the affidavit, Hwang asserts that Defendants do not have offices, property, agents, or employees in Florida. (*Id.* ¶¶ 5, 8). Nor do they possess a license to conduct business in Florida. (*Id.* ¶¶ 4, 8) Indeed, Defendants do not "conduct

any business in Florida." (*Id.* ¶¶ 5–7). While "[i]t is possible that a few clients of H BION have resided in Florida, . . . any sales to Florida residents make up less than 1% of all annual sales for H BION." (*Id.* ¶7).

Plaintiff presents no facts or evidence to rebut the assertions in Hwang's affidavit. In fact, in her Verified Response, Plaintiff seemingly abandons this basis for personal jurisdiction. Accordingly, the Court finds that Plaintiff has failed to establish a *prima facie* case for specific jurisdiction under section 48.193(1)(a)1. *See Horizon*, 421 F.3d at 1167 (finding no jurisdiction under section 48.193(1)(a)1. where out-of-state defendant had no office, place of business, or business license in Florida and sales to Florida customers totaled less than five percent of total sales).

### 2.    Section 48.193(1)(a)2.

Section 48.193(1)(a)2. provides jurisdiction over a defendant for a cause of action arising from its commission of "a tortious act within [Florida]." Plaintiff alleges that Defendants committed two tortious acts within Florida. First, she alleges that Defendants misappropriated her Trade Secrets. (Doc. 1, ¶¶ 60–65). Second, she alleges that Sooam and Hwang intentionally interfered with the Agreement between her and H Bion. (*Id.* ¶¶ 66–71). Therefore, to determine whether personal jurisdiction over Defendants exists under § 48.193(1)(a)2., the Court must first determine if Plaintiff has sufficiently pleaded these two claims to make a *prima facie* case of tortious acts within Florida. *See Catalyst Pharm., Inc. v. Fullerton*, 748 F. App'x 944, 947 (11th Cir. 2018).

Florida's Uniform Trade Secrets Act ("**FUTSA**") aims to prevent the actual or threatened misappropriation of trade secrets. The FUTSA defines a trade secret as:

> information including a formula, pattern, compilation, program, device, method, technique or process that:

(a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Fla. Stat. § 688.002(4).

To successfully plead a claim for misappropriation of trade secrets a plaintiff must allege that: "(1) [she] possessed secret information and took reasonable steps to protect its secrecy and (2) the secret [she] possessed was misappropriated." *Del Monte Fresh Produce Co. v. Dole Food Co.*, 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001).

"Misappropriation" is defined as the:

(a) [a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(b) [d]isclosure or use of a trade secret of another without express or implied consent by a person who:

1. [u]sed improper means to acquire knowledge of the trade secret; or

2. [a]t the time of disclosure or use, knew or had reason to know that her or his knowledge of the trade secret was:

a. [d]erived from or through a person who had utilized improper means to acquire it;

b. [a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

c. [d]erived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

3. Before a material change of her or his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

*Id.* § 688.002(2). "'Improper means' includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." *Id.* § 688.002(1).

Here, the Complaint alleges that Plaintiff possesses, owns, and took reasonable steps to protect "confidential trade secret information" consisting of the genetic material of Milly and her clones ("**Trade Secrets**"). (Doc. 1, ¶¶ 61–64). Without distinguishing between the acts of each Defendant, the Complaint further alleges that Defendant misappropriated Plaintiff's Trade Secrets "kn[owing] or ha[ving] reason to know that these trade secrets were improperly obtained." (*Id.* ¶ 63). Then, in her Verified Response, Plaintiff goes on to allege that Defendants "fraudulently induced [her] into entering into the [Agreement] which led to" their possession of "Milly's DNA." (Doc. 14 at 13). Using language from section 688.002(1), Plaintiff also alleges that Defendants "used improper means to obtain and continue to possess and use her trade secrets including misrepresentation and breach of duties to maintain secrecy." (*Id.* at 14).

Given Plaintiff's insistence that her Trade Secrets were obtained through improper means, the Court construes the Complaint as alleging that Defendants engaged in misappropriation as defined in sections 688.002(2)(a) or 688.002(2)(b)1.[1] Specifically, that Defendants: (1) acquired Plaintiff's Trade Secrets knowing or having reason to know that they were "acquired by improper means"; or (2) used "improper means to acquire

---

[1] Plaintiff does not allege that the Defendants disclosed her Trade Secrets after acquiring them "under circumstances giving rise to a duty to maintain [their] secrecy or limit [their] use." *See* Fla. Stat. § 688.002(2)(b)2.b. As noted above, Plaintiff insists that Defendants obtained the Trade Secrets through improper means. (*See* Doc. 1, ¶ 63; *see also* Doc. 14 at 14).

knowledge of [her] [T]rade [S]ecret[s]" and then disclosed or used them without proper consent. *See* Fla. Stat. §§ 688.002(2)(a), 688.002(2)(b)1. Plaintiff's claim fails.

At the outset, Plaintiff's claim is inadequately pleaded because she indiscriminately lumps all Defendants together without specifying the acts of each defendant. *See Lane v. Capital Acquisitions & Mgmt., Co.*, No. 04-60602 CIV, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006) (explaining that a complaint that lumps all defendants together fails to satisfy the minimum pleading requirements of Rule 8 of the Federal Rule of Civil Procedure). Next, Plaintiff's allegation that her Trade Secrets were acquired by "improper means" is completely belied by the terms of the Agreement and the allegations of the Complaint, which reflect that: (1) Plaintiff provided Milly's genetic material to H Bion; and (2) H Bion and Plaintiff received equal "rights, title, and interest in [the] . . . intellectual property developed or invented by H BION in the use of DNA from [Milly] during the performance of the" Agreement. (*See* Doc. 1, ¶¶ 28, 37; *see id.* at 15, 18 (provisions 2.1 and 4.1)). As such, the Court finds that Plaintiff has failed to adequately state a claim for misappropriation of a trade secret, and therefore, cannot rely on this claim as the basis for personal jurisdiction under section 48.193(1)(a)2.

Plaintiff's claim against Hwang and Sooam for intentional interference with a contract fails as well. To plead a claim for intentional interference with a contract, a plaintiff must plead four elements: (1) the existence of a contract or business relationship under which Plaintiff has legal rights; (2) proof of Defendants' knowledge of the contract or business relationship; (3) intentional and unjustified interference with the contract or relationship by Defendants; and (4) damage to Plaintiff as a result of the Defendants'

interference. *Tardif v. People for the Ethical Treatment of Animals*, No. 2:09-cv-537-FtM-29SPC, 2010 WL 3860733, at *8 (M.D. Fla. Sept. 29, 2010).

Plaintiff contends that Hwang and Sooam took serious, unjustified and intentional actions to cause H Bion to breach or otherwise disrupt her Agreement with H Bion. (Doc. 1, ¶ 69). However, the Complaint is devoid of any facts to support those contentions. Therefore, the Court cannot reasonably infer that Hwang or Sooam tortiously interfered with the Agreement. Accordingly, this claim cannot support an exercise of personal jurisdiction under section 48.193(1)(a)2.

### 3.    Section 48.193(1)(a)6.

Plaintiff's Complaint is similarly deficient as to personal jurisdiction under section 48.193(1)(a)6. of the Florida Statutes. This section requires that the plaintiff suffer a personal injury or physical property damage. *See Courboin v. Scott*, 596 F. App'x 729, 734 (11th Cir. 2014). Indeed, "Florida's Supreme Court has held that economic injury, unaccompanied by physical injury or property damage, is insufficient to subject a non-resident defendant to personal jurisdiction under § 48.193(1)(a)6." *Id.* (citations omitted). Here, nothing in the Complaint or the record alleges or indicates that Plaintiff suffered physical injury or property damage. Therefore, Plaintiff has not made a *prima facie* case for the exercise of personal jurisdiction over Defendants under this section of Florida's Long Arm Statute.

### 4.    Section 48.193(1)(a)7.

Finally, Plaintiff claims that Defendants submitted themselves to the specific personal jurisdiction of this Court under section 48.193(1)(a)7. of Florida's Long Arm Statute, which authorizes the exercise of jurisdiction over a defendant who "[b]reach[es]

a contract in [Florida] by failing to perform acts required by the contract to be performed in [Florida]." Fla. Stat. § 48.193(1)(a)7.  The Court disagrees.

As an initial matter, H Bion and Plaintiff were the only parties to the Agreement, therefore, section 48.193(1)(a)7. cannot serve as a basis for personal jurisdiction over Hwang and Sooam. Second, this section does not permit the exercise of jurisdiction over a nonresident or foreign corporation unless the defendant has a contractual "duty to perform an act *in Florida*; a contractual duty to tender performance to a Florida resident is not in itself sufficient to satisfy the statute." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1218 (11th Cir. 1999) (emphasis in original). Nor is it "enough that a foreign defendant merely contract with a Florida resident, or that performance under the contract could have been made in Florida; rather, the contract itself must *require* performance in Florida in order to invoke Florida jurisdiction under section" 48.193(1)(a)7. *Olson v. Robbie*, 141 So. 3d 636, 640 (Fla. 4th DCA 2014) (concerning Fla. Stat. § 48.193(1)(g), which later became § 48.193(1)(a)7.)

Upon review, the Court finds no language in the Agreement requiring H Bion to perform acts in Florida. Therefore, section 48.193(1)(a)7. provides the Court with no basis for exercising jurisdiction over H Bion. *See id.* (declining to exercise jurisdiction over a non-Florida resident because the terms of the contract at issue did "not clearly require performance in Florida"); *see also Groome v. Feyh*, 651 F. Supp. 249, 252 (S.D. Fla. 1986) (declining to exercise jurisdiction where there was no indication that duty allegedly breached was to be performed in Florida).

**B.    Due Process**

Having determined that Plaintiff has not made a *prima facie* showing that the exercise of personal jurisdiction is proper under state law, the Court need not determine if the exercise of personal jurisdiction is proper under the Due Process Clause. *See Madara*, 916 F.2d at 1514 ("Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant.").

**IV.    CONCLUSION**

For the reasons set forth herein, it is hereby **ORDERED** and **ADJUDGED** as follows:

1.    Defendants' Motion to Dismiss (Doc. 9) is **GRANTED**.

2.    The Complaint (Doc. 1) is **DISMISSED without prejudice**.

3.    Plaintiff's Amended Motion for Leave to File a Further Memorandum (Doc. 26) is **DENIED as moot**.

4.    Plaintiff's Motion for Appointment of Expert (Doc. 29) is **DENIED as moot**.

5.    The Clerk is directed to close this case.

**DONE AND ORDERED** in Orlando, Florida on December 3, 2019.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record